IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ROBERT J. PEREZ,**

        **Plaintiff,**

vs.                                          Civ. No.  13-516 JCH/RHS

**CITY OF FARMINGTON, KYLE
WESTALL, individually and as
CHIEF OF POLICE, ROBERT
MAYES, individually and as
CITY MANAGER, and JAMES
RUNNELS, individually and as
former CHIEF OF POLICE,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' [James Runnels and Kyle Westall] *Motion to Dismiss Count V (Defamation) of Plaintiff's Third Amended Complaint* [Doc. 48]. At issue is whether Plaintiff's Third Amended Complaint [Doc. 1-1] alleges sufficient facts to state a claim of defamation against Defendants James Runnels and Kyle Westall. After Defendants filed their motion, Westall filed a *Stipulated Notice of Dismissal of Counts IV and V Against Defendant Kyle Westall* [Doc. 77], which was approved by Plaintiff's counsel, informing the Court that Plaintiff had agreed to dismiss his claims for violation of liberty interest (Count IV) and defamation (Count V) against Westall. Accordingly, the Court notes that the motion currently under review pertains only to Defendant James Runnels. After reviewing the Third Amended Complaint ("TAC"), as well as the motion, response, and reply [Docs. 48, 49, 50], the Court concludes that it should be denied.

**STANDARD OF REVIEW**

Defendants move to dismiss Plaintiff Robert J. Perez's defamation claim under Rule 12(b)(6), which permits dismissal of a cause of action for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009) (internal quotation marks omitted). The Court must "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006) (internal quotation marks omitted). The Court's task is to determine whether the plaintiff has alleged facts sufficient to make his claims facially plausible, which is the standard to avoid dismissal. *See Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

**FACTS ALLEGED IN THE THIRD AMENDED COMPLAINT**

Viewed in the light most favorable to Perez, the relevant allegations in the TAC [Doc. 46] are as follows.

Perez was employed by the City of Farmington's police department as a sergeant from 1993 to 2013, where he received excellent performance ratings. TAC at ¶ 10, 13, 14. In early 2010, Perez was deposed in *Ron Anderson v. City of Farmington*, a lawsuit brought by a fellow sergeant in the Farmington Police Department ("FPD"), in which the plaintiff alleged that he had been discriminated against based on his age and that the City had improperly failed to promote

him. TAC at ¶ 16. After that deposition, administrative officials of the FPD, including defendants Runnels and Westall, began falsely stating that Perez was tape recording conversations with fellow officers and that Perez could not be trusted. TAC at ¶ 17-18. Defendants accused no one else of such actions. TAC at ¶ 21. As a result, on July 29, 2010, Perez—who is over 40 years of age and Hispanic—filed a charge of discrimination and retaliation with the EEOC. TAC at ¶ 19-20.

On May 23, 2010, Perez had been assigned to investigate the death of Tamara Gallegos, who just two days before her death had participated in a "drink lab" conducted by the FPD and the San Juan County Sheriff's Department. TAC at ¶ 22-23. A "drink lab" is a training program in which officers practice interacting with intoxicated volunteers in order to increase the officers' effectiveness in dealing with drunk drivers. TAC at ¶ 24. An FPD officer who drove Ms. Gallegos home after the drink lab was believed to have been the last person to have seen her before she died. TAC at ¶ 23, 25. Because Ms. Gallegos' manner of death had not yet been established, Perez determined that he needed to interview all persons, including FPD officers, who may have interacted with her at the drink lab. TAC at ¶ 25. A few days after beginning the investigation, Perez learned that Westall, then the Deputy Chief of Police, and Captain Keith McPheeters were interviewing drink lab participants, gathering statements, and collecting documents out of concern that FPD might be liable in Ms. Gallegos' death. TAC at ¶ 26. Perez was concerned that Westall and McPheeters were withholding this information from him and in one instance had an officer change his statement before Perez could interview him, thereby interfering with the investigation. TAC at ¶ 27-28. Perez expressed these concerns to Westall and McPheeters, as well as Defendant James Runnels, then the Chief of Police. TAC at ¶ 28, 31.

At a meeting on June 2, 2010, Perez presented Runnels with a written complaint about the interference with the investigation. TAC at ¶ 32. At this meeting, Runnels asked Perez if he was recording the conversation, repeating an allegation that the FPD had leveled against the plaintiff in the *Anderson* case, in which Perez had been deposed. TAC at ¶ 33. This reinforced Perez's concerns that Runnels believed the false accusations against him. *Id*. On June 8, 2010, Runnels told Perez that if he pursued his complaint, "it would come back on [him]," "this is going to become messy," and "everything done by you is open to investigation as part of the IA." TAC at ¶ 35-36. He also said that pursuing the complaint could result in a defamation lawsuit against Perez. Perez interpreted these statements as threats. *Id*. The following day, FPD opened an Internal Affairs investigation based on Perez's complaint, but the investigation was conducted by Lt. Darryl Noon, a direct subordinate of the subjects of the investigation, Westall and McPheeters. TAC at ¶ 37.

About this time, Ms. Gallegos' father filed a citizen's complaint against Lt. Steve Burch because Burch had released information about his daughter's suicide note without permission or knowledge of the immediate family; it contained no complaints against Perez. TAC at ¶ 38, 40. The FPD opened a second Internal Affairs investigation based on the father's complaint, but Runnels used it to initiate charges and an Internal Affairs investigation against Perez and another officer. TAC at ¶ 39, 41, 43. Perez alleges that the investigation was against FPD policies and procedures, and in this manner Runnels carried out his threat of reprisal against Perez. TAC at ¶ 43.

On July 29, 2010, Perez filed a charge of retaliation and discrimination with the EEOC, wherein he claimed that through false accusations and the improper Internal Affairs investigation, the FPD was retaliating against him for his testimony in the *Anderson* case. TAC

at ¶ 44. On August 4, 2010, Perez sent letters to the New Mexico Attorney General, the District Attorney for the Eleventh Judicial District, and the Farmington City Manager (Defendant Robert Mays) regarding Runnels' retaliation against him. TAC at ¶ 45. Perez asked those officials to appoint an independent agency to conduct the investigations discussed above. TAC at ¶ 46. Mayes refused. *Id*.

On September 12, 2010, the *Farmington Daily Times* ran an article quoting Runnels discussing Perez's investigation into Ms. Gallegos' death. TAC at ¶ 48. Runnels stated that Perez's investigation was "piss-poor and ineffective," "mishandled," and that Perez was not doing his job. TAC at ¶ 48. Runnels also stated that Perez's request for an investigation into Westall and McPheeters' alleged interference in the death investigation had "stirred-up a hornet's nest and [Perez and another officer] were the ones that are going to get stung." *Id*.

Perez alleges that these statements are false, have caused injury to Perez, and were done by malice because they were made by Runnels with reckless disregard of whether they were false. TAC at ¶ 129-132, 134.

## DISCUSSION

### I.      LAW REGARDING DEFAMATION

There are three categories of defamation plaintiffs—public officials, public figures, and private figures. *See Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 429, 773 P.2d 1231 (N.M.1989). In 1964, the United States Supreme Court held that the First Amendment "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York*

5

*Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).[1] This includes when a defendant acts "with a high degree of awareness of [the statement's] probable falsity or [if the defendant] entertained serious doubts as to the truth of his publication." *Harte–Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (internal quotation marks and citations omitted). Thus, while a private plaintiff can establish a defendant's liability by showing that he negligently made a defamatory statement about the plaintiff, "proof of actual malice (knowledge of the falsity of the statement or reckless disregard of the truth) applies to the public official and public figure plaintiff." *Newberry*, 108 N.M. at 429.

Under the "actual malice" standard, a plaintiff must prove by clear and convincing evidence "that a defamatory statement was published with knowledge that it was false or with reckless disregard of whether it was false." *Anaya v. CBS Broadcasting, Inc.*, 626 F.Supp.2d 1158, 1183 (D.N.M. 2009) (quotation and marks omitted); *see also Hardin v. Santa Fe Reporter, Inc.*, 745 F.2d 1323, 1326 (10th Cir. 1984) (plaintiff's burden under malice standard is to show "that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement") (quotation omitted). Further, "a public figure or public official must also show the falsity of statements at issue in order to prevail," while a private plaintiff need not make this showing. *Newberry*, 108 N.M. at 429-30.

Actual malice can be established using circumstantial evidence. *Dongguk University v. Yale University.*, 734 F.3d 113, 123 (2d Cir. 2013); *Fiber Systems, Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1170 (5th Cir. 2006) ("[A] court or jury may infer actual malice from objective circumstantial evidence. The evidence can show negligence, motive, and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual

---

[1] Defendants argue, and Perez does not dispute, that as a police officer he is a public figure and therefore must satisfy the "actual malice" standard.

6

malice.") (internal citations and quotations omitted); *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 183 (2d Cir. 2000) ("Evidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or falsity of a defamatory statement may also support a finding of actual malice.")

## II.      ANALYSIS

In their motion to dismiss for failure to state a claim, Defendants argue that Perez has failed to allege any facts to support a plausible claim that Runnels acted with actual malice. Defendants argue that Perez failed "to plead a single specific fact regarding Chief Runnels' [] knowledge about the subjects of [his] allegedly defamatory statements . . . ." Doc. 50 at 4. Defendants' argument suggests that Perez was required to come forward with direct evidence showing that Runnels knew or should have known of the falsity of his statements. As discussed above, however, that is not the law. A public official may plead and prove malice through circumstantial evidence.

At this Rule 12(b)(6) stage, the Court asks only whether Perez has alleged sufficient facts to make his claim facially plausible—not whether the plaintiff could find evidence to support it at trial. Further, it is enough for a plaintiff to allege the proper state of mind generally, along with supporting facts from which one may infer the requisite intent. *See, e.g., In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc) ("[P]laintiffs may aver [state of mind] generally, just as [Rule 9(b)] states—that is, simply by saying that [it] existed."). As the Fifth Circuit has explained:

> The Court in *New York Times* required "convincing clarity" of the proof presented to show actual malice[;] however, this requirement extends only to the proof required to meet the constitutional demands. As to the complaint, the Federal Rules of Civil Procedure require only that "[m]alice, intent, knowledge, and other condition of mind of a person ... be averred generally." Rule 9(b).

7

*Belli v. Orlando Daily Newspapers, Inc.,* 389 F.2d 579, 589 (5th Cir. 1967) (citation omitted); *see also Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 410 (2d Cir. 2000). The First Amendment imposes substantive requirements on the state of mind a public figure must prove in order to recover for defamation, but it doesn't require him to prove that state of mind in the complaint. *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002).

Here, Perez's complaint lists the precise statements alleged to be false and defamatory, who made them, and when. Perez's TAC also alleges the facts and circumstances leading up to those statements—circumstances that, when viewed in the light most favorable to Perez, suggest Runnels' ill will toward Perez for raising the issue of interference in the Gallegos death investigation, as well as Runnels' retaliatory motive related to Perez's testimony in the *Anderson* case. At this stage, these allegations suggest Runnels' motive and intent to make statements that he knew or should have known to be false. That Perez averred the required state of mind generally, without alleging corroborating *direct* evidence of Runnels' malice, does not defeat his complaint. Perez has done more than merely allege that he was defamed with malice. He has alleged specific facts showing circumstances from which one could infer actual malice. His complaint is sufficient, and the motion to dismiss his defamation claim will be denied.

**IT IS THEREFORE ORDERED** that Defendants' *Motion to Dismiss Count V (Defamation) of Plaintiff's Third Amended Complaint* [Doc. 48] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**